IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| LSREF2 BARON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:12cv965-MHT |
| | ) | (WO) |
| WYNDFIELD PROPERTIES, LLC, | ) | |
| RODNEY A. DECKER, and DAVID | ) | |
| EARNEST, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiff LSREF2 Baron, LLC seeks to collect on two promissory notes made by defendant Wyndfield Properties, LLC. LSREF2 also claims that defendants Rodney A. Decker and David Earnest personally guarantied the notes and are therefore liable for payment of the notes as well. Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332 (diversity).

This case is now before the court on LSREF2's motion for summary judgment. For the reasons discussed below, the motion will be granted in part and denied in part.

## I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Decker and Earnest are real estate developers and are the sole members of Wyndfield, a limited liability company. Wyndfield owned land in Montgomery County, Alabama with the intent of establishing a housing development named

2

Veristas. In 2006, the company borrowed $ 4.2 million from Regions Bank to finance the development. Decker and Earnest each signed a commercial guaranty agreement with the bank, personally guarantying the loan. The guaranty agreements were "on an open and continuing basis" and each stated, in all-capital letters:

> "CONTINUING GUARANTY: THIS IS A 'CONTINUING GUARANTY' UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS."

McGaughey Dec., Ex. D, E (Doc. No. 32-1) at 30, 38 (¶ 4). The "open and continuing basis" of each guaranty is noted in several other places in each agreement:

> "Under the Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing."

Id. at ¶ 1.

> "The word 'Indebtedness' as used in this Guaranty means [all principal, interest, and collection costs] arising from any and all debts, liabilities and obligations of every nature and form,

3

>           now existing or hereafter arising or
>           acquired, that Borrower ... owes or will
>           owe Lender."

Id. At ¶ 2

>           "DURATION OF GUARANTY. This Guaranty
>           will take effect when received by Lender
>           ... and will continue in full force
>           until all the Indebtedness incurred or
>           contracted before receipt by Lender of
>           any notice of revocation shall have been
>           fully and finally paid and satisfied and
>           all of Guarantor's other obligations
>           under this Guaranty shall have been
>           performed in full."

Id. At ¶ 5.

Wyndfield's development failed, and, as a result, it was not able to repay the full loan to the bank. After defaulting, Wyndfield, Decker, and Earnest negotiated a forbearance agreement with the bank in February 2011. Pursuant to the forebearance agreement:

- Wyndfield executed a deed in lieu of foreclosure, transferring the Veristas property to Regions Bank.

- The company executed a new, $ 300,000 promissory note, due in monthly installments. This note included an acceleration clause which allowed the bank to accelerate payments on any default and authorized interest at a rate of 2 % which would begin accruing upon acceleration.

4

- The company amended the initial promissory note,[1] so that it was now for $ 39,893.41. The holder of this note could collect only if the company defaulted on the $ 300,000 note.

- Finally, one of Decker and Earnest's other limited liability corporations granted Regions Bank a junior mortgage on one of its properties.

During the negotiations over the forbearance agreement, Regions Bank representative Robert L. Smith, Jr. assured Decker and Earnest that they would no longer be personally responsible for Wyndfield's debt to the bank. Decker says that he and Earnest included the junior mortgage in the agreement based on Smith's oral assurances. However, the forbearance agreement does not include any release or revocation of the continuing-guaranty agreements.

Wyndfield paid its installments on the $ 300,000 note on time for about six months, until bank representative

---

1. In fact, this was the second amendment to the $ 4.2 million note. In March 2010, Wyndfield and the bank amended the note to reduce the principal amount to $2.5 million. For this reason, the new $ 39,893.41 note was titled the "Second Amended and Restated Note."

Smith called on September 1, 2011. Smith wrote Decker and

Earnest the following email:

> "As I mentioned during our phone
> conversation a moment ago, I have
> learned that your deficiency notes and
> the previously foreclosed upon lots of
> Wyndfield were transferred to a 3rd
> party in late July or early August
> without my knowledge. With that said,
> the funds that you recently deposited to
> your checking account ending in 8339
> should be redirected to the new holder
> of the notes. We have not processed any
> debits against the account. I am not
> certain who your notes were sold to, but
> you should have received some
> correspondence by now to inform you of
> the transfer and where your future
> payments should be remitted. If you need
> anything else from me, please feel free
> to give me a call or reply."

Decker Aff. Ex. A (Doc. No. 34-1) at 7. Smith also orally

told Decker "not to worry about making payments until"

the new owner of Wyndfield's debt contacted the company.

Id. at 4.

LSREF2, the plaintiff in this case, was the company

that purchased Wyndfield's debt. However, the debt was

not actually assigned until June 2012. Wyndfield, Decker,

6

and Earnest did not learn that LSREF2 owned Wyndfield's debt until October 2012. At that point, an LSREF2 representative called to tell Decker that LSREF2 was filing a lawsuit to collect on Wyndfield's debt. Wyndfield has not made any payment since Smith's email over a year before.

LSREF2 brought this lawsuit on November 1, 2012, claiming that Wyndfield had defaulted on its two 2011 promissory notes for $ 300,000 and $ 39,893.41 and that Decker and Earnest were personally liable for those notes.

## III. DISCUSSION

In its motion for summary judgment, LSREF2 presents the court with copies of the two 2011 promissory notes for $ 300,000 and $ 39,893.41, the commercial guaranty agreements, and the contract between Regions Bank and LSREF2 assigning the notes, the forbearance agreement, and the Veristas property to LSREF2. LSREF2 also provides

7

an affidavit stating that Wyndfield is in default on the notes and outlining the amounts owed under the terms of the notes. LSREF2 argues that this evidence establishes that Wyndfield was obligated to pay LSREF2 in accordance with the terms of the notes, that Decker and Earnest personally guarantied the notes, and that Wyndfield defaulted on the notes.

Wyndfield, Decker, and Earnest present two arguments as to why they are not liable for the full amounts of the two notes. First, they argue that Wyndfield's nonpayment of the notes does not qualify as a default on the notes. Second, they argue that Decker and Earnest's commercial guaranty agreements do not apply to the notes.[2]

---

2. In their response, the defendants also argue that an error on the initial motion for summary judgment creates a genuine issue of material fact as to the amount owed, if liability does attach. However, at the pretrial conference on October 18, 2013, the defendants conceded that LSREF2's calculations are accurate.

## A. Default

Wyndfield acknowledges that it has not paid the monthly installments on its $ 300,000 note since September 2011, but it argues that it was not obligated to make those payments. Wyndfield relies on an email from Regions Bank representative Smith, reproduced in full above, which instructed Decker, as officer of Wyndfield, to stop making payments to the bank and to make payments to the new holder of the notes instead.

Since Regions Bank owned the notes at the time of Smith's email, the email is interpreted as a modification of the terms of the promissory notes and forbearance agreement. "Parties to a written contract may by mutual consent without other consideration ... alter, modify or rescind the contract." Cavalier Mfg., Inc. v. Clarke, 862 So. 2d 634, 640-41 (Ala. 2003)(quoting Watson v. McGee, 348 So. 2d 461, 464 (Ala. 1977)). "[I]f the terms of a subsequent agreement contradict the earlier agreement, the terms of the later agreement prevail." McLemore v. Hyundai Motor Mfg. Alabama, LLC, 7 So. 3d 318, 332-33

9

(Ala. 2008). However, a contract that must be in writing under the statute of frauds can only be modified in compliance with the writing requirement of the statute of frauds. <u>Cotter v. Harris</u>, 622 So. 2d 880, 881 (Ala. 1992). The statute of frauds voids an agreement unless there is "some note or memorandum thereof ... in writing and subscribed by the party to be charged therewith." 1975 Ala. Code § 8-9-2. Since Regions Bank is the party to be charged with the modification, Smith's email is sufficient writing to satisfy the statute of frauds. Furthermore, Decker's affidavit and Wyndfield's actions in compliance with a modification provide sufficient evidence to find that Wyndfield assented to the modification as well.

Since both Regions Bank and Wyndfield assented to a modification and Regions Bank's assent was in writing, the notes had been modified when LSREF2 took possession of them.  LSREF2 received the notes and agreement "on an 'as-is,' 'where is' basis, 'with all faults.'" Assignment Contract, McGaughey Dec. Ex. A (Doc. No. 32-1) at 33.

10

Therefore, it received the notes subject to Smith's modification.[3]

The question then becomes: What is the content of the modification? In answering this question at the summary-judgment stage, the court must draw all reasonable inferences in favor of the defendants. <u>Matsushita</u>, 475 U.S. at 587. Pursuant to that principle, it is possible to read Smith's email as modifying the contract so that non-payment between Smith's email and the time that Wyndfield received notice of where to make payments to

---

3. Wyndfield argues that this court should analyze Smith's email in the context of 1975 Ala. Code § 7-9A-406, which defines the rights and obligations of an "account debtor" to the assignor and assignee of the debtor's obligation. This statute is not relevant to this case for three reasons. First, for most of the time at issue, the notes were still in the possession of Regions Bank, and thus there had not yet been any assignment. Second, "account debtor" is a defined term in the statute, which excludes persons obligated on negotiable instruments. § 7-9A-102(3). At the pretrial conference on October 18, 2013, both parties agreed that the Wyndfield's two promissory notes were negotiable instruments. Finally, even if the statute did apply, there is nothing in the text of the statute that forgives nonpayment of a loan. § 7-9A-406. Instead, it allows a debtor to continue to pay the assignor of a loan, rather than the assignee. § 7-9A-406(a).

11

LSREF2 would not result in default.  Smith's email states that the payments "should be redirected to the new holder of the notes." Decker Aff. Ex. A (Doc. No. 34-1) at 7. Therefore, the email could be read as obligating Wyndfield to make those payments to LSREF2 only after LSREF2 identified itself.  The court cannot find as a matter of law that Wyndfield defaulted when it did not make further payments to Regions Bank.

Nevertheless, Smith's email says nothing about waiving monthly payments entirely or extending the term of the promissory note.  The email, therefore, in no way voided Wyndfield's debt obligation.  Moreover, there is no question that Wyndfield is in default--at least as of today.  At a pretrial conference in this litigation on October 18, 2013, the court asked the parties for more information about the amount of money Wyndfield has so far not paid in monthly payments and whether Wyndfield could pay that amount now.  In other words, now that Wyndfield knows, without question, that LSREF2 is the holder of its obligation, the question is whether it can pay that amount

12

now, for, if not, then it would obviously be in default.
Each party filed a written notice with the court, in which
they agreed that the total payment amount would be
$ 43,333.16, and Wyndfield admitted that it does not have
sufficient funds to pay this amount. Therefore, the
question of whether Wyndfield defaulted on the debt at some
point between 2011 and today is no longer at issue.  Even
if the court were to dismiss this case today, Wyndfield
would still be in default, and LSREF2 would be justified in
accelerating the $ 300,000 note and demanding payment on
the $ 39,893.41 note.

The only remaining question is the amount of interest.
Interest could begin accruing only when LSREF2 accelerated
the notes, and LSREF2 could accelerate the notes only upon
default by Wyndfield. Therefore, the court must determine
the exact date on which Wyndfield defaulted. There remains
a disputed issue of material fact on this question.

It is not clear when Wyndfield was first obligated to
remit its back payments to LSREF2.  LSREF2 may contest the
court's interpretation of the Smith email, since it is,

13

after all, an interpretation in the light most favorable to the defendants. Furthermore, the parties have not identified the exact date that Wyndfield was contacted by LSREF2 in October 2012 or the contents of that conversation. Therefore, the question of when Wyndfield was obligated to begin making monthly payments and pay the suspended payments must be decided at trial. However, LSREF2 has established default.

### B. Guaranty Agreements

Decker and Earnest next contend that, even if Wyndfield defaulted on the notes, they should not be held personally liable. Decker and Earnest present three arguments to escape personal liability. First, they argue that the forbearance agreement and restructuring of Wyndfield's debt altered the debt beyond the terms of their guaranty agreements, and that these alterations voided the guaranties. Second, they argue that the bank released them from their guaranties in the forbearance agreement and restructured promissory notes. Finally, they argue that

14

LSREF2 should not get the benefit of the guaranty agreements, because the guaranties were not assigned along with the promissory notes. All three arguments fail. Part of the reason that they fail is that Decker's and Earnest's guaranty agreements were structured as "continuing" guaranty agreements.

### 1. The Hybrid Nature of Continuing-guaranty Agreements

In order to understand why Decker and Earnest's arguments fail, it is necessary to understand the hybrid nature of such continuing guaranties under Alabama law. A continuing-guaranty agreement contains two elements. The first is a contract guarantying the initial debt--in this case, the $ 4.2 million note in 2006. The second element is "an offer to guarantee payment for future specified acts, such as future extensions of credit[. T]his offer is not accepted until such extensions of credit are made." Barnett Millworks, Inc. v. Guthrie, 974 So. 2d 952, 955 (Ala. 2007).

As an offer, the continuing aspect of the guaranty can be revoked by the guarantor, <u>Green v. Southtrust Bank of Sand Mountain</u>, 519 So.2d 1289, 1291 (Ala.1987). This is a separate issue from either the <u>release</u> or <u>voiding</u> arguments above, and Decker and Earnest do not argue that either of them revoked his guaranty offer. Decker's and Earnest's agreements provided for a specific procedure by which they could revoke the continuing guaranty:

> "If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail."

McGaughey Dec., Ex. D, E (Doc. No. 32-1) at 30, 38 (¶ 5). Such conditions for a valid revocation "must be given effect as written." <u>Guthrie</u>, 974 So. 2d at 957. Again, Decker and Earnest do not contend that either of them validly revoked the continuing offer contained in his guaranty agreement.

As a result, when Decker and Earnest restructured their loan and signed the forbearance agreement, Regions Bank held a contract which guarantied Wyndfield's original debt

16

and an outstanding offer from Decker and Earnest to
guaranty personally any of Wyndfield's future debt.

## 2. The Guaranty-Voiding Theory

Decker's and Earnest voiding argument fails because of
the hybrid nature of their continuing-guaranty agreements.

The voiding argument relies primarily on the Alabama
Supreme Court's recent case of <u>Eagerton v. Vision Bank</u>, 99
So. 3d 299 (Ala. 2012). The <u>Eagerton</u> court ruled that a
guaranty contract no longer applied to a loan after it had
been restructured and combined with other loans. The court
ruled that "any alteration beyond the terms of the guaranty
contract, regardless of injury and benefit to the
guarantor, is fatal." <u>Id</u>. at 306. Unlike Decker and
Earnest, the Eagertons' guaranty agreement identified a
specific loan and a specific principal amount which the
Eagertons were guarantying. <u>Id</u>. at 304-5. In fact, the
court contrasted the Eagertons' contracts with the guaranty
agreements signed by their daughter and son-in-law, the
Dotsons. The Dotsons, like Decker and Earnest, signed

17

continuing guaranties. Id. Since the Eagertons had agreed to guaranty only a particular loan, Vision Bank held no outstanding offer from them to guaranty other debts. The guaranty agreement would not extend to a new loan which was restructured in bankruptcy. Id. at 307-8.

The Eagerton case does not support Decker and Earnest's arguments. Unlike the Eagertons, Decker and Earnest each signed a continuing-guaranty agreement. Since neither individual had revoked the agreement before the loan was restructured, Regions Bank held an open offer from each of them to guaranty personally any new debt that Wyndfield acquired. In the continuing-guaranty agreements, Decker and Earnest offered to guaranty "any and all debts, liabilities and obligations of every nature and form, now existing or hereafter arising or acquired, that Borrower ... owes or will owe Lender" until the continuing guaranty was revoked. McGaughey Dec., Ex. D, E (Doc. No. 32-1) at 30, 38 (¶ 2). Even if the 2011 forbearance agreement and restructuring of the debt voided Decker's and Earnest's existing guaranty contracts on that debt, when Regions issued new promissory

18

notes, the bank accepted the "open and continuing" guaranty offers from Decker and Earnest. This created new contracts that bind Decker and Earnest to guaranty the two promissory notes.

### 3. The Release Theory

Decker and Earnest argue that the court should read a release of their guaranty agreements into the forbearance agreement, the two 2011 promissory notes, or some combination of the two. There is no ground for the court to find any such release in the text of the forbearance agreement or the notes, and the court is barred by law from looking further into negotiations, intentions, or oral representations which may have accompanied the drafting of those documents.

The forbearance agreement and promissory notes do not contain any explicit release from either guaranty agreement. In fact, the forbearance agreement states:

> "Guarantors acknowledge that they are collectively obligated to Lender for repayment of all of the Obligations and

19

> hereby reaffirm and ratify the terms of
> the Loan Documents, including but not
> limited to the Guaranties, and
> acknowledge that they are strictly
> enforceable in accordance with these
> terms and as modified by this
> agreement."

Forbearance and Turnover Agreement, Ex. A to Pl.'s Reply Br. (Doc. No. 35-1) at 2, ¶ 2.

Despite the plain language to the contrary, Decker and Earnest argue that the court should consider Decker's statement that he believed he was being released from the agreement, as well as oral statements of Smith during the course of negotiations that the restructuring of the loan would release Decker and Earnest from their guaranty agreements. Furthermore, Decker argues that they only granted Regions Bank a junior mortgage on the property held by their other limited liability corporation because of the representation that the bank would release them from their guaranty agreements.

"The court must find ambiguity in the contract before it may consider the intent of the parties." Defs.' Resp. to Mot. for Sum. J. (Doc. No. 34) at 10 (citing <u>Ryan</u>

<u>Warranty Serv. v. Welch</u>, 694 So. 2d 1271, 1273 (Ala. 1997)). There is no ambiguity in the forbearance agreement, the notes, or the guaranty agreements. Decker's unexpressed intention in signing the forbearance agreement and the notes does not, in itself, create ambiguity. Neither does the fact that Decker and Earnest did not sign the new promissory notes. Since the continuing guaranty had not been revoked, Regions Bank still held outstanding offers for Decker and Earnest to guaranty the debt. There was no need for Decker or Earnest to sign the promissory notes. By issuing the debt, the bank accepted the outstanding offers.

Smith's representations in and of themselves could not release Decker and Earnest from their guaranty agreements either. A guaranty is a surety contract, which is governed by Alabama's statute of frauds. 1975 Ala. Code § 8-9-2(3). "[A] contract required by the statute of frauds to be in writing cannot be modified by subsequent oral agreement." <u>Cotter v. Harris</u>, 622 So. 2d at 881. Even if Decker or Earnest relied on Smith's representations in signing the

21

forbearance agreement and granting Regions Bank the junior mortgage on another property, Alabama does not recognize exceptions to the statute of frauds for promissory estoppel or fraud in the inception. DeFriece v. McCorquodale, 998 So. 2d 465, 470-71 (Ala. 2008); Bruce v. Cole, 854 So. 2d 47 (Ala. 2003); cf. Garst v. GMAC Mortgage, LLC, 2013 WL 4851493 at *8-9, 12-13 (N.D. Ala. 2013) (Acker, J.) (acknowledging Alabama's strict application of statute of frauds in contract and tort cases, but refusing to extend the strictness to a suit for ejectment).

## 4. The Assignment Theory

Finally, Decker and Earnest claim that there is a question of fact as to whether their guaranty agreements continue to apply, since Regions Bank assigned the underlying notes without transferring the guaranties. This argument does not have merit. "[T]he general rule [is] that an assignment of a debt passes to the assignee any security for the payment thereof, and a guaranty passes with the assignment of a note." LPP Mortgage, Ltd. v. Boutwell, 36

22

So. 3d 497, 501 (Ala. 2009). Furthermore, the guaranty agreements were actually delivered along with the notes to LSREF2; the text of the guaranty agreements states that assignment is permitted and that they are binding on the successors and assigns of the signatories; and the forbearance agreement, including the affirmation of Decker and Earnest's guaranty agreements, was explicitly assigned to LSREF2. These facts all indicate that the default rule applies: LSREF2 was assigned the guaranty agreements as applied to the promissory notes.[4]

Since Decker and Earnest can show no reason that their continuing-guaranty agreements do not apply to the two promissory notes at issue here, the court must find that Decker and Earnest are personally liable for Wyndfield's default on the notes.

---

4. The fact that the guaranty agreements were not assigned may become relevant if Wyndfield sought new debt. It is not entirely clear whether the assignment of the underlying notes also assigns Decker's and Earnest's "open and continuing" offers to guaranty personally the debt that Wyndfield incurs or whether the offers remain with Regions Bank. However, this issue is not relevant to LSREF2's claims, and the court need not decide it.

23

* * *

Accordingly, it is ORDERED that plaintiff LSREF2 Baron, LLC's motion for summary judgment (doc. no. 32) is granted on all issues of liability, but denied as to the amount which defendants Wyndfield Properties, LLC, Rodney A. Decker, and David Earnest owe.

DONE, this the 5th day of November, 2013.


　　　　　　　　　 /s/ Myron H. Thompson
　　　　　　　　UNITED STATES DISTRICT JUDGE