IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| LSREF2 BARON, LLC,         ) | |
|     ) | |
|   Plaintiff,              ) | |
|     )             | CIVIL ACTION NO. |
|   v.                      ) | 2:12cv965-MHT |
|     )             | (WO) |
| WYNDFIELD PROPERTIES, LLC,  ) | |
| RODNEY A. DECKER, and DAVID ) | |
| EARNEST,                    ) | |
|     )             | |
|   Defendants.             ) | |

OPINION

Plaintiff LSREF2 Baron, LLC seeks to collect on two promissory notes made by defendant Wyndfield Properties, LLC and personally guaranteed by defendants Rodney A. Decker and David Earnest.  Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332 (diversity).

In a previous summary-judgment opinion, the court found that Wyndfield had defaulted on the notes and that Decker and Earnest were personally liable for the debt. LSREF2 Baron, LLC v. Wyndfield Properties, LLC, 2013 WL 5930546 (M.D. Ala. Nov. 5, 2013) (Thompson, J.).  However,

there is one remaining question.  Although it was clear that Wyndfield was in default on the notes at the time of summary judgment, there was room for genuine dispute as to when the default occurred.  By the terms of the notes, interest could not begin accruing until Wyndfield defaulted.  Therefore, the court could not determine the exact amount that Wyndfield owed at the summary-judgment stage.

During a telephone conference on November 26, 2013, the parties all agreed to forgo a non-jury trial on this remaining question and submitted it to the court on the written record to resolve any disputed facts.


### I. BACKGROUND

In February 2011, Wyndfield executed the two promissory notes at issue as part of a forbearance agreement with Regions Bank.  One note was for $ 300,000, due in monthly installments.  This note included an acceleration clause which allowed the bank to accelerate

payments if Wyndfield defaulted. The other note is for $ 39,893.41. The holder of this second note could collect only if the company defaulted on the $ 300,000 note. Both notes authorized interest at a rate of 2 % which would begin accruing upon acceleration of the $ 300,000 note.

The promissory notes have two identical provisions that limit modification. First, the notes state that, "No modification amendment or waiver of any provisions of this Note shall be effective unless in writing and signed by a duly-authorized officer of the Holder." Promissory Notes (Doc. Nos. 42-1, 42-2) at 3. Second, the notes provide that "This Note may not be modified, amended or supplemented in any manner except by a written agreement executed by both the Borrower and the Holder." Promissory Note (Doc. No. 42-1) at 4; Promissory Note (Doc. No. 42-2) at 5.

Wyndfield paid its installments on the $ 300,000 note on time for about six months, until bank representative Smith called Decker on September 1, 2011. After the call,

Smith wrote Decker and Earnest the following email:

> "As I mentioned during our phone conversation a moment ago, I have learned that your deficiency notes and the previously foreclosed upon lots of Wyndfield were transferred to a 3rd party in late July or early August without my knowledge. With that said, the funds that you recently deposited to your checking account ending in 8339 should be redirected to the new holder of the notes. We have not processed any debits against the account. I am not certain who your notes were sold to, but you should have received some correspondence by now to inform you of the transfer and where your future payments should be remitted. If you need anything else from me, please feel free to give me a call or reply.
>
> "Best Regards,
>
> "Robert L. Smith, Jr.
> Vice President
> Commercial Special Assets Department"

Smith Email (Doc. No. 42-6).

LSREF2, the plaintiff in this case, was the company that purchased Wyndfield's debt. However, the debt was not actually assigned until June 2012. Wyndfield, Decker, and Earnest did not learn that LSREF2 owned Wyndfield's debt

until October 2012. At that point, an LSREF2 representative called to tell Decker that LSREF2 was filing a lawsuit to collect on Wyndfield's debt. Wyndfield has not made any payment since Smith's email.

LSREF2 claims that Wyndfield defaulted when it stopped making payments, immediately after the Smith conversation and email. However, in its summary-judgment opinion, the court noted that the Smith email could constitute a modification of the $ 300,000 note, such that Wyndfield should not have made further monthly payments to Regions Bank. Instead, Wyndfield would be required to redirect each month's payments to the new holder of the note, as soon as the holder contacted Wyndfield at which point the company could learn where the payments could be remitted. There was not, in fact, any new holder of the note until June 2012, and the new holder, LSREF2, did not contact Wyndfield until October 2012. Therefore, if the Smith email indicated a modification of the terms of the note, Wyndfield could not have sent the back monthly payments

until after October 2012.  Therefore, Wyndfield would have defaulted  on the $ 300,000 note only when it failed to direct all of the monthly payments which had accrued to LSREF2 by November 1, 2013.

## III. DISCUSSION

LSREF2 presents two reasons that the court should not adopt its previous interpretation of the Smith email, which would result in a judgment that Wyndfield defaulted on November 1, 2012.  First, LSREF2 argues that the email does not modify the promissory notes because it was "a typical acknowledgment of a business telephone call." Pls. Trial Br. (Doc. No. 48) at 8.  Second, it argues that the text of the notes  bars the modification.  For the reasons discussed below, neither argument is persuasive. Therefore, the court finds that Wyndfield defaulted on its debt on November 1, 2012 when it did not furnish the accrued monthly payments to LSREF2.

LSREF2's first argument takes an overly formal approach to contract modification.  "Parties to a written

contract may by mutual consent without other consideration ... alter, modify or rescind the contract." Cavalier Mfg., Inc. v. Clarke, 862 So. 2d 634, 640-41 (Ala. 2003)(quoting Watson v. McGee, 348 So. 2d 461, 464 (Ala. 1977)).  As discussed below, Alabama law or the text of the contract can impose additional evidentiary or formality requirements on modification, but the default rule is that only mutual consent is required.  Such consent can occur during a "business telephone call," and the Smith email provides evidence that it did in this instance.  The email confirms that Smith told Decker that Wyndfield should not make further payments to Regions Bank on the $ 300,000 note and should instead redirect those payments to the new holder of the notes once the holder identified itself. Decker's subsequent actions indicate that he agreed to this change in the terms of the notes.  Both parties agreed that Wyndfield's obligations under the notes should change. This constitutes a modification of the notes.*

---

　　* It is not clear from LSREF2's trial brief whether
(continued...)

Second, LSREF2 points to a clause in the promissory notes that states that, "This Note may not be modified, amended or supplemented in any manner except by a written agreement executed by both the Borrower and the Holder." PX A at 5; PX B at 4.  However, "nonwaiver clauses and clauses that require modifications to be in writing can be found to have been waived upon proper proof." Retail

---

   *  (...continued)
it also challenges the modification under the Alabama Statute of Frauds, 1975 Ala. Code § 8-9-2.  Contracts governed by the Statute of Frauds must "meet the requirements of the Statute of Frauds." Kelmore, LLC v. Alabama Dynamics, Inc., 20 So. 3d 783, 793 (Ala. 2009). The Statute of Frauds does not require that the writing supporting a contract or modification take any particular form, only that it be "subscribed by the party to be charged [or its agent]." § 8-9-2.  "'The primary purpose of the Statute is evidentiary, to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made.'" Fausak's Tire Ctr., Inc. V. Blanchard, 959 So. 2d 1132, 1139 (Ala. Civ. App. 2006) (quoting Restatement (Second) of Contracts § 131 cmt. c).
   "'Generally speaking, the purpose with which a memorandum is prepared is immaterial, and it will suffice although it was not intended to evidence the contract or to comply with the [S]tatute [of Frauds].  If there is a memorandum, otherwise sufficient, it is not necessary that it be signed by the party to be charged with the intent to comply with the statute. His intention in this respect is immaterial.'" Id (quoting 10 Richard A. Lord, Williston on Contracts § 29:6 at 450-51).  Smith's email needed no additional intent for it to be sufficient evidence of mutual consent to a modification.

<u>Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.</u>, 985 So.2d 924, 930 n.3.  Specifically, "an intention to waive a right may be found where one's course of conduct indicates such an intention or is inconsistent with any other intention." <u>Id</u>. at 930 (quotation marks and alterations removed).  In this case, the restriction on modifications would operate to Regions Bank's interest, and Regions Bank, through Smith, nonetheless instructed Wyndfield to stop making payments and actually refused to accept further payments on the $ 300,000 note.  These actions indicate an intention to modify the terms of the note, waiving the formality requirements for modification.

Having found that the $ 300,000 promissory note was modified, Wyndfield could not have defaulted immediately after the Smith email.  The court finds that Wyndfield defaulted on November 1, 2012.  From that conclusion, the court will use LSREF2's interest calculations from its trial brief, which the defendants agreed were accurate on the November 26 telephone conference.  For a November 1,

9

2012 date of default, LSREF2 calculated a total amount due of $ 336,215.04.

* * *

Accordingly, judgment will be granted in favor of LSREF2 and against Wyndfield, Decker, and Earnest in the amount of $ 336,215.04.

DONE, this the 6th day of December, 2013.

    /s/ Myron H. Thompson
  UNITED STATES DISTRICT JUDGE